LORENZO P. GOMEZ and IRENE W. GOMEZ, husband and wife, Plaintiffs-Appellees, *v.* IGNACIO PAGADUAN and JULIA L. PAGADUAN, husband and wife, Defendants-Appellants

NO. 5993

JUNE 27, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

This is an appeal from various orders granting summary judgment in favor of sellers under an agreement of sale. The orders cancelled the agreement of sale, authorized the issuance of a writ of possession, authorized the seller to retain all payments received as liquidated damages, gave judgment for rent due for occupancy after the agreement was cancelled, and awarded costs and attorney's fees. The purchasers appealed.

On November 1, 1973, plaintiffs, as sellers, entered into an agreement of sale with defendants, as purchasers, concerning a condominium apartment in Aiea, Hawaii. The price was $60,000.00. Defendants paid $10,000.00 cash and agreed to make interest only payments of $375.00 per month and to pay other periodic expenses relating to the apartment as they came due. Full payoff of the $50,000.00 principal balance due was required on or before October 31, 1976.

The agreement of sale provides that in the event of the purchasers' default the sellers may elect to cancel the agreement ". . . and all payments theretofore made by the Purchaser hereunder shall be retained by the Seller, absolutely, without any other or further notice, and shall be deemed to be

liquidated damages and rent for the use and occupation of said premises by the Purchaser and in settlement of any depreciation of the same and not as a penalty, . . ."

Defendants failed to pay various payments due in the latter part of 1974.

On January 27, 1975, pursuant to a provision in the agreement of sale, plaintiffs filed an affidavit at the Bureau of Conveyances, State of Hawaii, confirming the cancellation of the agreement.

On January 29, 1975, plaintiffs filed a complaint seeking cancellation of the agreement of sale, permission to keep all sums paid as liquidated damages, issuance of a writ of possession, and judgment against defendants for the reasonable rental value of the apartment from the date of cancellation to the date of termination of occupancy. Thereafter, plaintiffs filed a motion for summary judgment. On March 24, 1975, the lower court issued an Order Granting Partial Summary Judgment Canceling Agreement of Sale. On April 21, 1975, the court issued an Order Granting Partial Summary Judgment and Directing Issuance of Writ of Possession. On April 22, 1975, the court issued a Writ of Possession directing defendants to vacate the premises by May 1, 1975, which they did.

Thereafter, the court entered a Memorandum Opinion containing its statement of undisputed facts and conclusions of law. Part of the undisputed facts noted by the court were:

11. From January 27, 1975, to May 1, 1975, Defendants paid to Plaintiffs a total of $715.00.

12. The fair rental value of the condominium during its occupancy by Defendants was $340.00 per month.

13. The value of the condominium declined after the Agreement of Sale was exe··uted and its fair market value was $50,000.00 on Janua· y 27, 1975.

14. Plaintiffs paid a real estate broker's commission in the amount of $3,600.00 to Herbert K. Horita Realty in connection with the sale of the condominium to Defendants in 1973.

On July 23, 1975, the court issued an Order Granting Summary Judgment; Order Denying Leave to Amend; Final

Judgment. This Final Judgment decreed "[t]hat Plaintiffs are entitled to retain as liquidated damages and/or as actual damages all sums paid to them by Defendants pursuant to the Agreement of Sale . . ." and it gave judgment in favor of plaintiffs in the amount of $348.47 plus $3,578.50 attorney's fees and $77.00 costs, a total of $4,003.97.

The $348.47 award was the difference between the rent due between January 27, 1975 (the date of termination of the agreement) and May 1, 1975 (the date of termination of possession) at $340.00 per month, less the amount of all payments made by defendants to plaintiffs during that period.

There are no disputes concerning the lower court's statement of undisputed facts, the cancellation of the agreement of sale, the issuance of the writ of possession, the award of the rent due between the date of cancellation, the date of termination of actual tenancy, and the award of attorney's fees and costs.

The issue is whether in the circumstances of this case the lower court erred in permitting the plaintiffs to keep all payments made by the defendants prior to the plaintiffs' termination of the defendants' rights under the agreement.

Defendants contend that when a purchaser defaults and the seller elects to cancel the agreement and take back the property, all the seller is entitled to in addition to the return of the property is the reasonable rental value of the premises.

Plaintiffs contend that in such a situation the seller may keep as liquidated damages all sums paid so long as there is a reasonable relation between the amount of the liquidated damages and the amount of the actual damages.

We agree with the plaintiffs.

At common law, a defaulting purchaser could not recover from his seller any money paid on the contract. *See* Annot., *Vendee's Recovery of Purchase Money,* 31 A.L.R.2d 8 (1953). This common law rule has long been the majority rule in the United States. *Hansbrough v. Peck,* 72 U.S. 497 (1866).

The modern trend, led by Utah and California, avoids the harshness of the majority rule and seeks an equitable result. *Quillen v. Kelley,* 216 Md. 396, 399, 140 A.2d 517, 520 (1958);

Lee, *Defaulting Purchaser's Right to Restitution Under the Installment Land Contract*, 20 MIAMI L. REV. 1 (1965).

In Utah, a provision in an agreement which allows the seller to keep as liquidated damages all payments made by a defaulting purchaser prior to the termination of the purchaser's rights under the agreement is enforceable if the liquidated damages are not disproportionate in comparison to the seller's actual damages. *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446 (1952).

In California, such a liquidated damage provision will not be enforced unless it is impracticable or extremely difficult to fix the actual damage. *Freedman v. Rector*, 37 Cal. 2d 16, 230 P.2d 629 (1951).

In Utah, actual damages include:

(1) Loss of an advantageous bargain;

(2) Any damage to or depreciation of the property;

(3) Any decline in value due to change in market value of the property not allowed for in items nos. 1 and 2; and

(4) For the fair rental value of the property during the period of occupancy. *Perkins v. Spencer*, 121 Utah, 468, 243 P.2d 446, 451, 452 (1952).

In California, actual damages include:

(1) The excess of the contract price over the fair market value of the property at the date of termination; *Kudokas v. Balkus*, 26 Cal. App. 3d 744, 103 Cal. Rptr. 318, 323 (1972).

(2) The amount of interest due during the purchaser's equitable ownership; *Id.* at 326.

(3) Out-of-pocket expenses or consequential damages caused by the breach; *Id.* at 324.

(a) Consequential damages include the real estate commission to be paid by the vendors on resale of the property (whether they resell it or not). *Royer v. Carter*, 37 Cal. 2d 544, 233 P.2d 539 (1951); *Barton v. White Oak Realty, Inc.*, 271 Cal. App. 2d 579, 76 Cal. Rptr. 587 (1969).

The issue in this case has not been directly addressed in Hawaii case law. However, the Hawaii Supreme Court has decided a case which compels our decision in this case.

*Jenkins v. Wise*, 58 Haw. 592, 574 P.2d 1337 (1978), involved a cancellation of agreement of sale where the value of the property increased from the date of the agreement to the date of its cancellation. Notwithstanding the purchaser's default and the cancellation of the agreement of sale, the court required the seller to convey the property to the purchaser upon receipt of the entire unpaid balance of the purchase price, together with contractual interest then accrued and reasonable attorney's fees and costs.

> [W]here the vendee's breach has not been due to gross negligence, or to deliberate or bad faith conduct on his part, and the vendor can reasonably and adequately be compensated for his injury, courts in equity will generally grant relief against forfeiture and decree specific performance of the agreement.

*Id.* at 597 (citations omitted).

This case involves a cancellation of agreement of sale where the value of the property decreased from the date of the agreement to the date of the cancellation. However, the principle stated in *Jenkins v. Wise* applies with equal force to both situations.

A non-defaulting seller is entitled to the benefit of the essence of his bargain. He is entitled to the purchase price and to interest during the life of the agreement. He is also entitled, where the agreement so provides, to be reimbursed all expenses reasonably incurred in enforcing his rights under the agreement. He is not, absent purchaser's bad faith, entitled to forfeiture.

We see no essential difference between the receipt of the purchase price in cash as in *Jenkins v. Wise* or its receipt in the form of value (actual value of the premises plus principal payments previously received) as in this case.

We hold, where the purchaser's breach does not involve bad faith conduct, a provision in an agreement stating that in the event of purchaser's default the seller may elect to keep all payments as liquidated damages may be enforced by the seller if there is a reasonable relation between the amount of payments retained and the amount of seller's actual damages.

On the question of actual damages, we generally agree with California's method of determination. Therefore, for purposes of comparison, actual damages include:

(1) The excess of the contract price over the fair market value of the property at the date of termination of the agreement;[1] and

(2) The amount of interest due during the purchaser's equitable ownership; and

(3) The actual (if resold) or estimated (if not resold) costs of sale (including broker's fees) which the seller reasonably incurred or would reasonably incur on resale of the property on or about the date of termination of the agreement; and

(4) Any payments other than principal and interest which the agreement required the purchaser to make but which he did not make; and

(5) Any expenses or damages which the agreement entitles the seller to claim from the purchaser in the event of purchaser's breach.[2]

As noted in the lower court's findings of fact, plaintiffs' actual damages are greater than the sum of defendants' payments under the agreement.

Affirmed.

*Theodore G. Meeker (Arthur A. Corrales* on the briefs) for defendants-appellants.

*David W. Proudfoot (Bruce C. Bigelow* with him on the brief) for plaintiffs-appellees.

---

[1] We do not decide the rights and liabilities between the parties with respect to an increase or a decrease in the value of the premises occurring between the date of termination of the agreement and the date of termination of possession.

[2] The trial court may, if authorized by law, award attorney's fees and costs which are not added in item 5.